ENOCH C. SWAIN, Respondent, *v.* WILLIAM H. SCHIEFFELIN et al., Appellants.

In an action against a manufacturer for a breach of warranty upon a sale of goods, which he knew at the time of the sale were intended to be used for a particular purpose, the measure of damages is not limited to the difference in value of the goods as warranted, and as they proved to be, as in cases where like articles are sold as merchandise for general purposes; but profits lost and expenses incurred, because of the breach, may be recovered.

In an action to recover damages for an alleged breach of contract on a sale, it appeared that plaintiff was a manufacturer of ice cream, and purchased of defendants material, manufactured by them, for coloring, which they, knowing the purpose for which it was to be used, represented to be absolutely pure and harmless. Many persons who ate cream made by plaintiff, in which said coloring matter had been used, were made sick with symptoms of arsenical poison. An analysis of the material showed that it contained arsenic, and plaintiff destroyed the ice cream and ices in which it had been used. *Held,* that plaintiff was entitled to recover the value of the goods so destroyed and the damage occasioned by the loss of customers caused by the sale of the poisonous cream.

*Crain* v. *Petrie* (6 Hill, 522), distinguished.

(Argued June 13, 1892; decided October 1, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 8, 1890, which affirmed a judgment in favor of plaintiff entered upon a verdict.

This was an action to recover damages for an alleged breach of contract of sale.

The facts, so far as material, are stated in the opinion.

*William Jay* for appellants.

*John O. McGuire* for respondent.

FOLLETT, Ch. J. In 1888 and 1889 the defendants were druggists and engaged in business at the city of New York. In those years the plaintiff was a manufacturer of ice cream

and ices at the city of Brooklyn, which he sold to persons and families for immediate consumption. The defendants knew the character of the business in which the plaintiff was engaged. December 28, 1888, the defendants, for $2, sold and delivered to the plaintiff a bottle of "carlet red," which they had previously manufactured, representing "that it was absolutely pure and harmless." The defendants knew that it was purchased for coloring certain kinds of ice creams and ices. One of the defendants testified that the formula for "carlet red" is: "One ounce of red aniline, half a gallon of alcohol, and two pounds of glycerine, which when mixed makes 96 fluid ounces of "carlet red." March 4, 1889, the plaintiff manufactured some strawberry ice cream and apricot ice, using "carlet red" to give them color, and sold them to about forty different families who were his customers. About two hundred persons, who ate of the cream and apricot ice, were sick with symptoms of arsenical poisoning. An analysis of the "carlet red" showed that it contained arsenic. Some of the persons who ate of these articles became slightly, and others seriously ill. By reason of the sickness, complaints, and the discovery by the chemists of arsenic in the "carlet red" the plaintiff destroyed all of the ice creams and ices colored with that material, and he asserts that the occurrence greatly injured his business. He brings this action to recover: (1) The value of the ice cream and ices destroyed, and (2) The damages occasioned by the loss of customers, of sales and profits thereon, subsequent to the occurrences complained of. The trial court submitted the questions of fact to the jury, in a charge which was not excepted to in any respect, except as to the rule of damages laid down, and we must determine the case upon the theory that the issues of fact were well found for the plaintiff. The important question presented by this appeal is, what damages was the plaintiff entitled to recover?

The principle on which damages should be assessed is well stated in the recent case of *Wakeman* v. *Wheeler & Wilson Manf. Co.* (101 N. Y. 205), where it is said: "When it is certain that damages have been caused by a breach of contract

and the only uncertainty is as to their amount, there can rarely be good reason for refusing, on account of such uncertainty, any damages whatever for the breach. A person violating his contract should not be permitted entirely to escape liability because the amount of the damages which he has caused is uncertain. It is not true that loss of profits cannot be allowed as damages for a breach of contract. Losses sustained and gains prevented are proper elements of damage." * * * That the plaintiff was damaged by reason of the impurity of the " carlet red " has been found by the jury upon conflicting evidence, and the verdict is binding upon this court upon the questions of fact. This injury was brought about by the breach of the contract by the defendants. When one violates his contract or his duty to another, the theory of the law is that compensation shall be made for the injury directly and proximately caused by the breach of contract or duty. Ordinarily upon the sale and delivery of a chattel accompanied by a warranty of its quality, which is broken, the measure of damages is the difference between its value had it been as warranted, and as it proved to be. But it seems to be conceded that this rule is not applicable to the case at bar. If it is, the plaintiff was not entitled to recover the value of the property destroyed, but the difference in the value of the " carlet red " as it was warranted to be, and as it was found to be, which could not have exceeded the purchase price of $2. In case a manufacturer of goods sells them to a purchaser to be used for a particular purpose, which is known by the vendor at the time of the sale, a more liberal rule prevails than in cases where like articles are sold as merchandise for general purposes. In the former cases profits lost and expenses incurred may be recovered. (*Passinger* v. *Thorburn*, 34 N. Y. 634; *Van Wyck* v. *Allen*, 69 id. 61; *White* v. *Miller*, 71 id. 118; *White* v. *Miller*, 78 id. 393; *Messmore* v. *N. Y. Shot & Lead Co.*, 40 id. 422; *Booth* v. *Spuyten Duyvil R. M. Co.*, 60 id. 487.)

This broader rule rests on the theory that the vendor, having sold the articles with the knowledge that they were purchased for a particular purpose, should be held liable for such

damages as naturally flow from the breach of his contract, and which he, or any reasonable man, might apprehend would follow from the breach. In the present case the defendants knew the precise use which the "carlet red" was to be put to, and we think it is reasonable to hold that they should have apprehended that the use by the plaintiff of a poisonous or deleterious article would destroy his business. It seems to us that the natural and probable result of the sale of a poisonous, for a wholesome, article to be used by the purchaser in the preparation of food, to be distributed to and eaten by his patrons, would entail a loss of business and of profit to the purchaser. Had the defendants incorrectly, but without malice, reported that the plaintiff had sold unwholesome or poisonous ice cream, they would have been liable for the plaintiff's loss of custom, (*Hallock* v. *Miller*, 2 Barb. 630; *Bergmann* v. *Jones*, 94 N. Y. 51), although not, in the case supposed, for punative or exemplary damages. The rules governing the assessment of damages are the same in contract as in tort, unless exemplary damages are recoverable. (*Baker* v. *Drake*, 53 N. Y. 211; 11 Sedg. Dam. [8th ed.] p. 29, § 30; 2 id. p. 4, § 429.)

In *Crain* v. *Petrie* (6 Hill, 522) an executory contract existed between Petrie and Gage, a butcher, by which the latter agreed to purchase of the former a quantity of mutton. Gage refused to accept of the mutton because he learned that Crain had sold diseased sheep to Petrie. The action was to recover damages for selling diseased sheep. The plaintiff sought to recover the damages occasioned him by the non-fulfillment of Gage's contract, and also the damages sustained by the refusal of others to purchase mutton of him. The court, in discussing the right to recover special damages, said that such damages "must appear to be the legal and natural consequences arising from the tort, and not from the *wrongful act of a third party* remotely induced thereby." * * * " That the refusal of Gage to receive and sell good and well cured hams, shoulders, etc., contrary to a previous arrangement with him, in consequence of the reports that the plaintiff had purchased a lot of diseased sheep of the defendant, was a

wrongful breach of contract by Gage, for which the plaintiff had an adequate remedy against him, and, therefore, such damages could not be recovered against Crain, who sold the sheep." The court, in its opinion, cites *Vicars* v. *Wilcocks* (8 East. 1) and *Morris* v. *Langdale* (2 Bos. & Pull. 284), which lay down the same rule, but these cases have been expressly overruled. (*Lumley* v. *Gye*, 2 E. & B. 216; *Lynch* v. *Knight*, 9 H. L. Cas. 577, 586, 590, 600; *Green* v. *Button*, 2 C. M. & R. 707; *S. C.*, Tyr. & Gr. 118; Mayne Dam. [4th ed.] 661; Stark. S. & L. [4th Eng. ed.] 320, 438; 1 Suth. Dam. 68; 2 Smith's L. C. 464.)

The only authorities referred to by the two text writers cited in *Crain* v. *Petrie*, are the two overruled cases.

*Petrie's* case is distinguishable from the one at bar in the fact that he did not purchase the sheep to sell to persons who were to use them for food, but he intended to sell them to a butcher who was to sell to consumers, besides it was not shown in that case that the defendant knew that the plaintiff purchased the sheep for the purpose of having them converted into food, even by others. Again Petrie did not sell the diseased sheep, so he sustained no loss by reason of their sale.

The case at bar is distinguishable from a class of cases in which the damages sought to be recovered arise from a breach of contract or of duty, or from the wrongful act of a third person, which breach of contract, duty or wrongful act may have been remotely caused by the person sued. In such cases the person injured has a right of action against those who have violated their contract or duty, or have committed a wrongful act to his injury, but here this plaintiff has no cause of action against his former customers who refused to patronize him because of his sale of poisonous ice cream.

The judgment should be affirmed, with costs.

Bradley, J. The jury found that the plaintiff's product of ice cream, etc., which became useless by reason of its infection with the compound purchased of the defendants and was destroyed, had the value of fifty dollars. To that extent the

damages sustained clearly came within the rule of relief. But the plaintiff claims further that he was injured in his business by this act of the defendants. And the evidence in its support was that of his average monthly receipts for the year ending in March, 1889, and those for the three months following that time. This basis of estimate was somewhat speculative or uncertain, as there may within that period of three months have been some other causes for a less average of monthly receipts during such time than for the entire year preceding. But as no exception was taken to the charge as made by the court, or to its refusal to charge on the subject of damages, other than such as went to the right of the plaintiff to recover anything, the question whether the plaintiff should be allowed to recover special damages for injury to his business, was not specifically or necessarily raised after the close of the evidence. Nor is the exception taken to the denial of the motion to reduce the damages awarded by the verdict available on this review. (*Oldfield* v. *N. Y. & H. R. R. Co.*, 14 N. Y. 310; *Standard Oil Co.* v. *Amazon Ins. Co.*, 79 id. 506.) The only question here in that respect arises upon the exception taken to the reception of the evidence on the subject of the average monthly receipts, before referred to, of the plaintiff's business. And the admissibility or the inadmissibility of that evidence is dependent upon the question whether or not the plaintiff's loss occasioned by injury to his business may be deemed a proper element of damages. It may be if there was no intermediate efficient cause to which the injury may have been imputed. In such case the result usually may be attributed to the primary as the proximate cause. Such was the case of the lighted squib thrown by the party charged into a crowd of people, and then for self-protection thrown by one after another until it injured the party who recovered damages for the injury (*Scott* v. *Sheppad*, 2 W. Bl. 892; 3 Wilson, 403), and where the boy in escaping the threatened attack of the party pursuing him ran against and knocked out the faucet of a cask of wine, the pursuing party was held liable for the loss. (*Vandenbergh* v. *Truax*, 4 Denio, 464.) The

injurious results which may or ought to be foreseen of a wrongful or negligent act, are also deemed the proximate consequences of it. This was illustrated in the familiar case of the person in the balloon descending into the garden under circumstances which invited people to go to his assistance, and in doing so trampled the vegetables, etc., for which he was held liable. (*Guille* v. *Swan*, 19 John. 331.) In those cases and others similar in principle the damages suffered were deemed the proximate result of the wrongful or negligent acts of the parties charged.

In the present case, so far as the plaintiff's property was injuriously affected or contaminated by the use of the compound sold him by the defendants, the damages were attributable directly to the act complained of, and to that extent he was properly permitted to recover. (*Jeffrey* v. *Bigelow*, 13 Wendell, 518; *Mullett* v. *Mason*, L. R. [1 C. P.] 559.) Beyond that the damages claimed for injury to business and for loss of profits which the plaintiff may otherwise have realized from his trade were special and consequential. The question is whether they were the natural and proximate result of the act chargeable to the defendants. In *Crain* v. *Petrie* (6 Hill, 522) the defendant was charged with fraudulently selling diseased sheep to the plaintiff, who was engaged in the butchering business and selling mutton. The plaintiff there gave evidence, subject to exception, that one Gage, who had agreed to take mutton from him, also other customers of the plaintiff, declined to do so in consequence of the report that he had purchased the diseased sheep. The court, on review, held that the reception of the evidence was error; that so far as related to the refusal of Gage to take mutton it was a breach of contract, for which the plaintiff had his remedy against him; and that the discontinuance of purchases by others "resulted from a want of confidence in the care, skill or integrity of the plaintiff himself, the people assuming that he might sell the meat of diseased sheep for a good and merchantable article." And Ch. Justice Nelson there said: "The consequential loss which the plaintiff was

allowed to prove at the trial was too remote and speculative to come within any established rule on the subject;" and that "to maintain a claim for special damages this must appear to be the legal and natural consequences arising from the tort and not from the wrongful act of a third party remotely induced thereby. In other words the damages must proceed wholly and exclusively from the injury complained of."

The proposition there, in its relation to the claim founded upon the refusal of Gage to take mutton as he had agreed, is clearly distinguishable in principle from that in the case at bar. The refusal of Gage was a violation of his contract, and it might be treated as the efficient and immediate cause of the damages so occasioned to the plaintiff within the doctrine that when the original wrong is rendered injurious by reason only of the intervention of some independent wrongful act of another, the latter will be treated as the proximate cause of the injury, which will be imputed to it alone. (*Hoey* v. *Felton*, 11 C. B. [N. S.] 142; *Vicars* v. *Wilcocks*, 8 East. 1; *Ward* v. *Weeks*, 7 Bing. 211; *Terwilliger* v. *Wands*, 17 N. Y. 54; *Lowery* v. *W. U. T. Co.*, 60 id. 198.) This rule was not applicable to his other customers, who, for like reason, had ceased to buy his meat. And apparently there is no distinction in principle between the *Crain* case in that respect and the present one so far as relates to the claim for special damages resulting from the loss or reduction of the business of the plaintiff. And, therefore, by giving controlling application to this case of the views of Ch. Justice Nelson as broadly as expressed in *Crain* v. *Petrie*, the consequential injury to the plaintiff's business might not be treated as imputed to the act of the defendants as the legal or proximate cause, but would be deemed attributable in that sense to the want of confidence in the care, skill or integrity of the plaintiff. As has already been observed, there may be in the causation a succession of dependent acts or events through which may be traced the primary as the proximate cause of the resulting injury; and when injurious consequences which

proceed from a wrongful or negligent act may, or ought to have been foreseen, the author of it is responsible. A dealer in food products who is known to use deleterious substances in their production cannot expect much patronage in that line of trade. And it could with ordinary forecast be foreseen that the supply to him of poisonous compounds to use for such purpose would, if made public, be materially prejudicial to his business. The publicity of the fact of the purchase by him of poisons to be so used would have an effect in that direction similar to that of the report of his use of them for such purpose, and differing, if at all, in degree only.

In the present case the published imputation that the plaintiff had sold poisonous ice cream seems to have been justified by the fact. And the compound by which his product was so infected, was innocently used by the plaintiff upon the faith of the defendants' representation that it was wholesome. The disposition made of the *Crain* case was not dependent upon the exception to evidence offered to prove that the customers, other than Gage, had ceased to deal with Petrie. It could rest upon the proposition that the violation by Gage of his contract was the only cause to which the damages resulting from his refusal to take mutton, were legally imputable, and for which he alone was liable to Petrie, the plaintiff in that action at the trial, and defendant in error on the review. And in view of the legal principles to which advertence has been made, the *Crain* case may properly and should be limited to that proposition in its application to the present one. There was here no intermediate wrongful or negligent act to which the consequential injury to the plaintiff or the special damages sustained by him can be imputed. In view of the facts as found by the jury in respect to the nature of the compound, those damages followed according to the ordinary course of events from the cause complained of, and may be deemed the legitimate sequence of it.

The judgment should be affirmed.

PARKER, BROWN and LANDON, JJ., concur with FOLLETT, Ch. J.; VANN and HAIGHT, JJ., concur with BRADLEY, J.

Judgment affirmed.