CRAMERTON MILLS, INCORPORATED, Respondent, Appellant, *v.* NATHAN & COHEN CO., INC., Appellant, Respondent, Impleaded with GALEY & LORD, INC., Defendant.

First Department, December 5, 1930.

*J. Hampden Dougherty, Jr.,* of counsel [*Lowe & Dougherty,* attorneys], for the plaintiff.

*Robert E. Samuels* of counsel [*Robert H. Wrubel* with him on the brief; *Cohen, Cole, Weiss & Wharton,* attorneys], for the defendant Nathan & Cohen Co., Inc.

MERRELL, J.   While the defendant Nathan & Cohen Co., Inc., has appealed from so much of the order of the Special Term as directed that the first, second, third and fourth defenses of each of the causes of action alleged in the amended complaint be stricken out of the answer of said defendant, the appellant now directs its appeal to so much of the order as directed that the first, second, fourth and sixth counterclaims be stricken from its answer.   Upon this appeal the defendant, appellant apparently acquiesces in so much of the order appealed from as struck out the first, second, third and fourth affirmative defenses, and contents itself with asking reversal of the order in so far as it struck out the aforesaid counterclaims.   This appeal, therefore, involves merely the question as to the sufficiency of the counterclaims set forth in the answer of the said defendant, appellant, to plaintiff's amended complaint.

Plaintiff is a manufacturer of merchandise in the raw state known as gray goods, and brings the present action to recover the purchase price of goods which it alleges it contracted and agreed to sell to defendant, appellant, and for which said defendant has refused to pay.   According to the allegations of the answer here under consideration, on or about and between January 31, 1929, and February 5, 1929, the defendant, appellant, entered into a contract with a corporation known as Galey & Lord, Inc., for the sale and delivery by Galey & Lord, Inc., to said defendant of 150,000 yards of the merchandise in question, and known as style 21000.   The agreed price was sixty cents a yard.   In its original complaint the plaintiff alleged that Galey & Lord, Inc., acted as principal and assigned its claim to plaintiff.   In its amended complaint the plaintiff alleged that it acted as principal and that Galey & Lord, Inc., was merely its agent.   The defendant, in such state of the pleadings, being somewhat uncertain with whom it was dealing, properly served a copy of its answer upon plaintiff and also upon the defendant Galey & Lord, Inc., in accordance with the provisions of sections 211, 213 and 271 of the Civil Practice Act. It is alleged in the answer to the amended complaint that in describing the goods in question as style 21000 the defendant, appellant, and Galey & Lord, Inc., intended to and did refer to and describe gray goods of a type, construction and quality like and equal in construction and quality to certain gray goods which

had theretofore from time to time been manufactured by the plaintiff herein and sold to defendant, appellant, by Galey & Lord, Inc.; that when such gray goods were converted, finished, printed and dyed by defendant the finished product was known as rayon crepe, and that the converted goods held its body and shape and the threads thereof were so woven that they held their place in the fabric and did not slip or slide upon each other, and that it was understood and agreed between defendant, appellant, and Galey & Lord, Inc., that the goods to be delivered under said contract were in all respects to conform and at least equal certain sample pieces in the possession of the defendant, appellant. It is further alleged that Galey & Lord, Inc., was a dealer in goods of the description specified in said agreement, and that it had special skill, knowledge and judgment of and concerning said goods and of the processes and methods of manufacture thereof; that defendant, appellant, relied upon such special skill, knowledge and judgment of Galey & Lord, Inc., and upon the warranties and agreements which it made with reference to said goods, and that said Galey & Lord, Inc., knew and intended that the defendant should rely thereon; that in and by said agreement the said Galey & Lord, Inc., represented and warranted that the merchandise to be sold and delivered under said contract was to conform to the said sample and to be style 21.000 and to be of the first or best quality, to be of merchantable quality, and free from defects of manufacture, and fit for the uses for which defendant intended it, namely, to be converted by defendant, appellant, finished, printed and dyed, and to be sold and delivered by defendant, appellant, to its customers, and that Galey & Lord, Inc., represented and warranted that when so converted the rayon crepe should be of strong, firm and durable type, and the component threads thereof to be of such a type or quality and to be so firmly woven that they would not slip or slide upon each other. The answer further alleges that Galey & Lord, Inc., procured plaintiff thereafter to manufacture, and that plaintiff did manufacture, the merchandise to be delivered by Galey & Lord, Inc., under said contract, and delivered to this defendant a part of the said merchandise under said agreement; that Galey & Lord, Inc., broke its said agreement in that the merchandise which it delivered to the defendant, appellant, was inferior to said sample and was not of the kind, quality or construction as agreed upon between the parties; that the goods were not of the first or best quality, and were not of a merchantable quality, and that said goods were not free from defects of manufacture, and were not fit for the purpose for which defendant intended to use the same; that on the contrary said merchandise

was of unmerchantable quality and was unfit for said purpose in that when the same was converted by defendant the crepe rayon produced therefrom was not firm or durable but was weak and flimsy, and the component threads thereof were of an improper type or quality and were not firmly placed or woven in the fabric, but slid upon each other causing holes or apertures to appear in the finished fabric, and that such merchandise delivered to defendant was worthless and of no value. Defendant, appellant, further alleges that at the time of the delivery of said merchandise to defendant, the said defendant, appellant, was ignorant of the existence of said defects, and that such defects were latent in character, which, by reason of the nature of the merchandise, could not be and were not discovered until after the completion of the processes of converting the same. It is further alleged in the answer of the defendant, appellant, that in ignorance of the aforesaid defects in said merchandise the defendant necessarily expended large sums in connection with the processes of converting the same, to wit, the sum of thirty-eight cents a yard. Defendant, appellant, further alleges in its answer that in ignorance of the aforesaid defects in the said merchandise the defendant entered into various agreements with its customers whereby it had agreed to sell and deliver to them large quantities of the finished product to be produced from said merchandise, and that it had agreed with its said customers that said crepe rayon to be sold and delivered to them by the defendant, appellant, should be firm, merchantable and of good quality and free from defects, and that after the making of said agreements with said customers the defendant delivered to them thereunder said crepe rayon converted from the aforesaid merchandise, which, by reason of the matters stated was not firm, merchantable, of good quality, and free from defects. It is further alleged by defendant that by reason of such defective goods certain of the defendant's customers refused to keep or pay for the crepe rayon sold and delivered to them by the defendant, and that defendant was compelled to and did allow to said customers the full sales price thereof, amounting in the aggregate to $13,673.28; that in addition thereto certain other customers of the defendant, appellant, refused to keep or pay for said crepe rayon sold, and returned the same to defendant, appellant, which was thereupon compelled to and did accept return of said last-mentioned crepe rayon, and compelled to and did sell the same at a much reduced price, suffering damage therefor in the aggregate amount of $17,469.44. Defendant further alleges in its answer to the amended complaint that in addition to the foregoing items the defendant is still in receipt of similar complaints and refusals to pay for said

crepe rayon from its customers, and, upon information and belief, alleges that it will be compelled to allow to its said customers and suffer a loss on resale of returned crepe rayon in large sums, and that altogether the defendant has been damaged in excess of $31,142.72. Defendant alleges that the sums which it allowed its customers to compensate said customers by reason of the defective nature and quality of said crepe rayon and the sums for which it resold the crepe rayon returned by said customers were reasonable in amount. The defendant, appellant, further alleges that prior to the making of the contract in suit the defendant did a large, extensive and profitable business confined to goods and merchandise of the highest quality and grade, and had and enjoyed a reputation for selling and delivering only merchandise of the highest kind, quality and grade, and had and enjoyed a valuable good will, and that by reason of the matters theretofore in its answer alleged the business, reputation and good will of the defendant have been seriously and gravely damaged; that it lost many of its valuable customers, who have refused and still refuse to deal with the defendant because of the defective quality of the crepe rayon converted by defendant from the said merchandise received by defendant from Galey & Lord, Inc., and sold and delivered by defendant to its customers, and that by reason of all of this the defendant has suffered special damages in the sum of $50,000. Defendant further alleges that within a reasonable time after discovery of the defects in the merchandise delivered to it as alleged the defendant gave notice to Galey & Lord, Inc., that said merchandise was defective in the respects mentioned; that subsequent thereto Galey & Lord, Inc., assigned and transferred to plaintiff its alleged right to receive, collect and recover from defendant the purchase price of the merchandise in question, and the defendant alleges that the cause of action set forth in its answer to the amended complaint existed and was held and belonged to it before the alleged assignment by Galey & Lord, Inc., to plaintiff of its cause of action alleged in the amended complaint.

It is further alleged in the answer of the defendant, appellant, that after the making of the agreement between Galey & Lord, Inc., and defendant, Galey & Lord, Inc., delivered to defendant 49,356¾ yards of the gray goods covered by the contract, which merchandise was converted by defendant and sold and delivered to its customers; that after discovery by the defendant that the merchandise in question was defective in the respects hereinbefore stated, defendant duly notified Galey & Lord, Inc., thereof and refused to receive, accept or pay for any more of the merchandise referred to in said contract, and that Galey & Lord, Inc., thereupon admitted the

existence of said defects and agreed among other things to make to defendant, appellant, an allowance because of such defects of thirty cents a yard, which allowance was thereafter made by Galey & Lord, Inc., and the balance of the purchase price of said 49,356¾ yards remaining after crediting the allowance was thereafter paid by defendant to Galey & Lord, Inc.; that thereby it was agreed that Galey & Lord, Inc., should procure plaintiff to manufacture a further quantity of the merchandise referred to in the contract, and that defendant should not be or remain obligated to receive, purchase or pay for the same unless it should in all respects be manufactured by plaintiff so as to conform to the representations, warranties and agreements as to quality contained in said contract, and that defendant should not be or remain obligated to receive, purchase or pay for the remainder of the merchandise unless such remainder should in all respects conform to said promises, representations, warranties, agreements and description and should also in all respects be as good as the said further quantity to be manufactured by plaintiff; that pursuant to said last-mentioned agreement Galey & Lord, Inc., procured plaintiff to manufacture and thereafter Galey & Lord, Inc., delivered to defendant a further quantity, 6,294 yards, thereof, which merchandise when delivered was found by defendant to be in accordance with the representations, warranties and agreements made by Galey & Lord, Inc., and that thereafter Galey & Lord, Inc., delivered to defendant the remainder of the merchandise called for by the agreement, to wit, 85,538 yards, which last-mentioned yardage was converted by defendant at large expense, and after it was converted the defendant discovered that the same defects of fabrication existed with reference to said 85,538 yards, and that thereupon Galey & Lord, Inc., agreed that if this defendant would receive said 85,538 yards and would sell and deliver the same to its customers, any loss or damage occasioned to it by so doing would not have to be borne by defendant, appellant, but that the same would be borne by plaintiff, and that Galey & Lord, Inc., would cause plaintiff to bear and pay the same; that nevertheless, plaintiff has failed and omitted to bear and pay the said loss and damage and said Galey & Lord, Inc., broke its said agreement, and failed and omitted to keep its contract and cause plaintiff to bear and pay the same, in that said Galey & Lord, Inc., has failed, omitted and refused, and still omits and refuses to bear and pay the loss and damage occasioned thereby; that subsequent to the times aforesaid Galey & Lord, Inc., assigned and transferred to plaintiff its alleged right and claim to receive, collect and recover from defendant, appellant, the purchase price of said

merchandise, and that the cause of action referred to in said answer was held and belonged to defendant before the said assignment by Galey & Lord, Inc., to plaintiff.

Based upon said allegations of the answer to the amended complaint the defendant, appellant, in its said answer alleges four counterclaims, all of which have been stricken out by the order appealed from, and demands affirmative judgment thereon against plaintiff in the sum of $81,142.72, said sum comprising the damages alleged to have been suffered by defendant, appellant, by reason of the allowances made to certain of its customers for inferior goods of $13,673.28, and the further sum of $17,469.44, loss and damage suffered by defendant on the resale of crepe rayon delivered to certain other of its customers, and amounting to $31,142.72, together with the sum of $50,000, which defendant, appellant, alleges it sustained from loss of customers and injury to its business flowing from the delivery of the inferior goods to defendant, appellant. By the order appealed from these four counterclaims were stricken out. We think that each of the counterclaims mentioned was properly interposed by defendant, appellant, and, in so far as the defendant, appellant, may be able to establish its said claims, will entitle it to affirmative relief. In our opinion special damages alleged in the answer are recoverable by defendant, appellant, from plaintiff or from its assignor, Galey & Lord, Inc., as the proximate result of the breach of warranty made upon the sale of the goods in question to defendant, appellant. These special damages do not consist of loss of profits, but flow from an alleged serious injury to the defendant's reputation and good will caused by the defective goods delivered to defendant, appellant, and which it converted and sold and delivered to its customers. According to the allegations of the answer the defendant, appellant, carried on an extensive and profitable business and enjoyed a reputation for dealing in goods of the highest type and quality. Such good will and business reputation constituted a valuable property right, and the defendant, appellant, may recover the damage which it sustained flowing directly from the delivery to it of goods of faulty manufacture resulting in the ultimate alienation of its customers. Section 150 of the Personal Property Law, subdivision 6 (as added by Laws of 1911, chap. 571), provides: " The measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events, from the breach of warranty." While it is true that in subdivision 7 of section 150 of the Personal Property Law (as added by Laws of 1911, chap. 571) it is provided that " In the case of breach of warranty of quality, such loss, *in the absence of special circumstances showing proximate damage*

*of a greater amount*, is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty " (Italics are the writer's), it seems to us that the damages claimed by defendant, appellant, did arise under special circumstances showing the proximate damage suffered by defendant, appellant, to be in a greater amount than the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty. These special circumstances are fully set forth in the said answer to the amended complaint. The goods delivered were represented to be fit for the purposes for which they were to be used. It is alleged that the seller knew of the use to be made of the goods; that they were to be converted and sold to the customers of the defendant, appellant. The existing defect in the gray goods was latent and undiscoverable to the defendant, appellant. The defendant, appellant, was in entire ignorance of such defect, and the same did not develop until the goods were converted and delivered to its customers. As the result of the delivery by defendant, appellant, to its customers of the defective goods the defendant's business, good will and reputation were damaged, as clearly shown by the refusal of its customers further to deal with the defendant, appellant. The question presented upon this appeal is not as to whether the defendant, appellant, may be able to prove its special damage, but as to whether it had a right to claim such damage in its answer. The decisions in this State and in sister States seem to support the contention of the defendant, appellant, that it may recover, as special damages, the amount of injury which it has sustained to its business, reputation and good will. (*Swain* v. *Schieffelin*, 134 N. Y. 471.) In that case the Court of Appeals said (at p. 473): " In case a manufacturer of goods sells them to a purchaser to be used for a particular purpose, which is known by the vendor at the time of the sale, a more liberal rule prevails than in cases where like articles are sold as merchandise for general purposes."

At page 474 the Court of Appeals further said: " In the present case the defendants knew the precise use which the ' carlet red ' was to be put to, and we think it is reasonable to hold that they should have apprehended that the use by the plaintiff of a poisonous or deleterious article would destroy his business. It seems to us that the natural and probable result of the sale of a poisonous, for a wholesome, article to be used by the purchaser in the preparation of food, to be distributed to and eaten by his patrons, would entail a loss of business and of profit to the purchaser."

The principal facts in the *Swain* v. *Schieffelin* case are practically

the same as those in the case at bar. Here the defendant, appellant, alleges that the seller knew that the goods purchased were to be manufactured and converted into a finished product and that the same was to be resold to the customers of defendant, appellant. In the *Swain* case, as here, it is alleged that the goods were seriously defective and not in accordance with the warranty, and that the finished product was manufactured therefrom in ignorance of the latent defect, resulting as in the instant case, in an injury to the business and good will of the buyer. It was held in that case by the Court of Appeals that damages for such injury were properly recoverable. (See, also, *Sorenson* v. *Keesey Hosiery Co.*, 244 N. Y. 73; *Acme Glass Co.* v. *Woods-Lloyd Co.*, 182 App. Div. 538.) In *Barrett Co.* v. *Panther Rubber Mfg. Co.* (24 F. [2d] 329) a quite similar situation arose. In that case plaintiff manufactured rubber heels and purchased a certain composition or material to be used in its manufacturing business. The seller of the raw material knew that the heels were to be resold in the course of the buyer's business. A latent defect in the material rendered the heels unmarketable. Action was brought for breach of warranty and the Circuit Court of Appeals affirmed a judgment in favor of the buyer, which included $20,000 as damages for loss of good will. The Circuit Court of Appeals in that case (at p. 337) said: " These heels were largely scattered in the trade, to the lasting detriment of the reputation of plaintiff's product. It is not necessary that damages of this kind, in order to be recoverable, shall be capable of calculation with mathematical accuracy; these elements may be determined by approximation [citing cases]. After a careful study of the proofs on this subject, we think there was no error in the allowance to the plaintiff of $20,000 for the loss of good will." It, therefore, seems to us that the contention of the defendant, appellant, that it is entitled to recover as special damages for injuries to its business good will is sustained by abundant court decisions. We are, therefore, of the opinion that the Special Term improperly struck out the counterclaim contained in the answer of the defendant, appellant.

Upon the appeal of plaintiff, the only matters apparently seriously urged are, first, that the contract between the parties was in writing, and that said contract negatived the existence of the warranty which the defendant pleads. While it is alleged in the answer that the contract was in part in writing, it is not alleged that the entire contract was in writing, and it may well develop on the trial that the real contract was oral and the writings merely evidence of the real contract. As to plaintiff's contention that the answer failed to state any recoverable damages, even though the defendant may

have failed to allege a proper measure of damages, such failure does not destroy the right of defendant to recover under the allegations of its answer. Whatever damages the defendant has suffered will be a matter of proof upon the trial.

Plaintiff also criticises the defendant, appellant, for bringing in Galey & Lord, Inc., as a party defendant. As before stated, we think, under the provisions of the Civil Practice Act, it was entirely proper for defendant to join Galey & Lord, Inc., as a party defendant. In its original complaint the plaintiff alleged Galey & Lord, Inc., was the principal and assigned its claim to plaintiff, whereas, in the amended complaint the allegation is that plaintiff was principal and Galey & Lord, Inc., merely its agent. Both complaints were verified, and under such circumstances it was entirely proper for defendant to insist that both be joined as parties defendant.

The order appealed from should be modified by striking out the paragraph thereof which grants the motion to strike out the first, second, fourth and sixth counterclaims of the answer of defendant, appellant, and by denying the motion to strike out said counterclaims, and as so modified affirmed, with ten dollars costs and disbursements to defendant, appellant, respondent, against plaintiff, respondent, appellant.

DOWLING, P. J., MARTIN, O'MALLEY and SHERMAN, JJ., concur.

Order so far as appealed from modified by striking out the paragraph thereof which grants the motion to strike out the first, second, fourth and sixth counterclaims of the answer of the defendant, appellant, and by denying the motion to strike out said counterclaims, and as so modified affirmed, with ten dollars costs and disbursements to said defendant against the plaintiff.