can be afforded, a defense that the plaintiff has an adequate remedy at law is insufficient, and its insufficiency can be raised by demurrer. Edmonds v. Stern, 89 App. Div. 539, 540, 85 N. Y. Supp. 665.

The interlocutory judgment should be modified, with costs, and the demurrer sustained, without costs.    All concur.

(99 App. Div. 327)

### UVALDE ASPHALT PAV. CO. v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.    December 16, 1904.)

1. CONTRACTS—PAYMENT—PLEADINGS—ADMISSION.

Where, in an action on a contract with a city for street cleaning, the answer admitted that between certain dates a certain number of cubic yards of snow and ice were removed by plaintiff, and that the contract price thereof aggregated $15,373.26, but alleged that the contract postponed plaintiff's right to receive payment for any work until each and every stipulation therein contained on the part of plaintiff was complied with, and that such sum became due, subject to a deduction of $4,100, under a liquidated damage clause, and alleged payment of $11,-272.26 as constituting the entire amount to which plaintiff was entitled under the contract, and under the evidence the city might have claimed a larger deduction, such answer should not be construed as an admission that the final payment actually made was due.

2. SAME—ACCORD AND SATISFACTION.

Where plaintiff accepted a final payment for street cleaning which involved a deduction under a liquidated damage clause in the contract, and executed a release to defendant, such payment constituted an accord and satisfaction, though the city conceded plaintiff's right to recover the amount actually paid, regardless of the validity of the liquidated damage clause, until the release was impeached.

3. CORPORATIONS—RELEASE—SEAL—ATTACHMENT.

Where plaintiff corporation, being largely engaged in city work, authorized impressions of its corporate seal to be made on wafers which were delivered to the acting disbursing officer of the city comptroller's office with a view to their being used when necessary in the execution of papers concerning plaintiff's contracts with the city, and plaintiff's president knew, in executing a release from further liability under a contract, that the attachment of plaintiff's corporate seal was required, but, instead of attaching it himself, left it to such disbursing officer to attach after plaintiff acknowledged that it was attached by due authority of the company in executing a release, plaintiff was bound thereby to the same extent as though the president had himself affixed the seal.

4. SAME—ACKNOWLEDGMENT—IMPEACHMENT—EVIDENCE.

In an action to recover an alleged balance due on a municipal contract, evidence held insufficient to overcome the presumption of the due execution of a release, raised by the certificate of acknowledgment attached thereto.

Appeal from Special Term, New York County.

Action by the Uvalde Asphalt Paving Company against the city of New York. From a judgment on the decision of a referee dismissing the complaint on the merits, plaintiff appeals.    Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

P. J. Carlon, for appellant.

Theodore Connoly, for respondent.

LAUGHLIN, J. The action is brought to recover the sum of $4,100, being the balance of the contract price for the removal of snow and ice from certain streets of the city of New York, which was deducted by the city from the final payment upon the ground of a violation of the contract by the plaintiff, and pursuant to a liquidated damage clause contained therein. The referee found that on the 4th day of February, 1901, three inches of snow fell in the city, and before 3 o'clock in the afternoon the snow inspector, by direction of the commissioner of street cleaning, served notice in writing upon the plaintiff for the removal of the snow from about 4,100 city blocks covered by his contract; that the plaintiff failed to commence the work of removing the snow in part of the district within the time specified and required by the contract, and that it failed to employ at any time as many men on any of the gangs in one of the districts as it was its duty to do under the contract; that, although it was the duty of the plaintiff to commence the work by 7 o'clock that evening, and to prosecute the same with diligence, it failed to commence part of such work before the following afternoon, and practically abandoned the work in part of the district on the morning of February 5th; that the plaintiff only removed a small quantity of the snow that fell on 102 blocks during that storm, and, although it commenced the work in part of the territory, it failed to prosecute the same with the diligence required by the contract, or to employ in the performance of the work the number of men directed by the commissioner of street cleaning, as provided in the contract. Although there is no special contention on the part of the appellant that it was not guilty of a violation of its contract, a careful review of the evidence leads to the conclusion that the referee was justified in finding the appellant guilty of breaches of the contract as specified.

The city pleaded as a defense to the action a general release alleged to have been executed and delivered by the plaintiff at the time of receiving the last installment as a final payment; and also that it was warranted in deducting the amount for which suit is brought by virtue of a liquidated damage clause contained in the contract for the breaches of the contract on the part of the plaintiff. The learned counsel for the appellant concedes that, if the release was executed, and the seal attached thereto in the regular way, it would bar a recovery; but he contends, in brief, that the instrument presented as a release does not bar a recovery for two reasons: First, that it was executed by mutual mistake; and, second, that the certificate of acknowledgment, which was prima facie evidence of the due execution of the release by authority of the plaintiff, was rebutted by evidence showing that the seal was not affixed by authority of the company, and that the release, therefore, became merely a receipt for the amount of money actually paid at the time, and recited therein, which it is claimed was concededly due. The claim that the final payment actually made was concededly due is based upon an admission contained in the answer of the defendant, which we think should not be so construed. The answer admits that between the 31st day of January and the 6th day of February,

1901, 42,703½ cubic yards of snow and ice were removed by the plaintiff and that the contract price thereof aggregated the sum of $15,373.26; but alleges that the contract postponed the right of the plaintiff to demand and receive payment for any work done thereunder until each and every stipulation therein contained on the part of the plaintiff should be complied with, and admits that said sum became due and owing to the plaintiff, subject to a deduction of the sum of $4,100 under the liquidated damage clause of the contract, to which reference is made, and alleges that the sum of $11,272.26 has been paid to the plaintiff on account thereof, which constituted the entire amount to which the plaintiff was entitled under the contract.   In view of the evidence, which shows that the defendant might well have claimed a larger deduction on account of the plaintiff's breaches of the contract and the liquidated damage clause, but that it was willing to make the final payment which was made in full settlement of its liability under the contract, these provisions of the answer should not be construed as an absolute admission on the part of the defendant of the plaintiff's right to recover the amount actually paid, except upon his concession of its right to deduct the amount which was deducted.   Moreover, the city asserted the right to make the deduction.   It had plausible grounds for such assertion, and, even though it conceded the right of the plaintiff to recover the amount it actually paid, still this would constitute an accord and satisfaction, regardless of the validity of the liquidation damage clause, until the release is impeached. Jackson y. Volkening, 81 App. Div. 36, 80 N. Y. Supp. 1102, affirmed 178 N. Y. 562, 70 N. E. 1101.

The learned referee held that the liquidated damage clause of the contract was void upon the ground that by other provisions of the contract the city was fully indemnified against all actual damages, and that, therefore, the liquidated damage clause, instead of providing for damages which were difficult of ascertainment, in fact provided for an arbitrary penalty.   We think the learned referee overlooked one important element of damages which was not covered by the other provisions of the contract, and which, in its very nature, would have been most difficult of ascertainment.   This contract related to the removal of snow and ice from many of the principal thoroughfares in the portion of the city where travel is great and congested.   If the snow and ice, after being collected in piles for removal, should be allowed to remain for even a comparatively brief period of time, the city might be held liable for personal injuries upon the theory of negligence by those traveling in vehicles. It is quite likely that the city could not readily employ others prepared to promptly remove the snow and ice in case of the failure of the plaintiff to perform its contract.   The liquidated damages authorized by the contract are startlingly large, and, in the view we take of the case, it is unnecessary to decide whether or not that provision of the contract could be sustained.   We make these observations, not with a view to expressing an opinion that the liquidated damage clause of the contract was valid and enforceable, but

to show that we do not affirm that part of the decision which holds the same to be invalid.

The final payment made on the contract was $2,259.60, and it was made to the president of the company on the 10th day of May, 1901. Evidently, pursuant to a custom in such cases, the comptroller caused a notice to be sent by a postal card to the plaintiff that the voucher was ready for payment. Pursuant to this notice, R. T. Rokeby, the president of the company, called at the comptroller's office on the 10th day of May, 1901, and applied to Timothy W. Crowley, the acting disbursing officer, who was known to Rokeby, and from whom Rokeby had on other occasions received warrants. The conversation between Crowley and Rokeby is in dispute. The evidence shows that Crowley handed to Rokeby a bundle of papers for signature or execution. One of these was a voucher showing the amount due the plaintiff on this contract, containing separate certificates by the inspector, the deputy commissioner, the chief clerk, the commissioner of street cleaning, and the deputy auditor, following which was a form of receipt reciting the receipt of the comptroller's warrant for $2,259.60 "in full payment of above account." This Rokeby signed in the name of the company, by him as president. Either attached to this voucher, or as a separate paper referring to it—the evidence does not clearly show which—was an affidavit for execution by Rokeby, showing that the account was correct; that the services for which the charge was made had been duly authorized and rendered, and were reasonable and just, and had not been paid; that the account had not been assigned, and that no perquisites or commissions had been paid therefor. This affidavit Rokeby signed and swore to before Crowley as a commissioner of deeds. Another of the papers consisted of a receipt which Rokeby executed in like manner as the former. It recited more fully that the plaintiff had received from the comptroller warrant No. 10,267A, for the sum of $2,259.60, "in full of the within contract, No. 3,221, for the removal of snow and ice." With the other papers delivered to Rokeby was the comptroller's warrant, which he retained for the plaintiff. Another of the papers was a general release reciting that the plaintiff, in consideration of the payment of said sum, among other things, released the defendant from all liability under the contract for the removal of snow and ice to which reference was specifically made, and that the plaintiff had caused its corporate seal to be affixed thereto, and its corporate name to be signed thereto, by its president. This release Rokeby also signed as follows: "Uvalde Asphalt Paving Company, by R. T. Rokeby, Prest." Attached to the release is the genuine seal of the company, and it purports to have been attached in the presence of Crowley on the same day, and to it is attached a certificate of acknowledgment by Rokeby as president, in the usual form of corporate acknowledgments, before Crowley, as commissioner of deeds, on the same day. Rokeby testified that he did not acknowledge this release, and that he signed it without reading it, or knowing that it was a release; and further testified, in substance, that he had received payments upon other con-

tracts of the plaintiff with the city, and had been required to execute general release, but that on those occasions his attention had always been called by the disbursing officer to the nature of the paper; that on this occasion he supposed he was receiving not a final payment on the contract, but a payment on account; that on previous occasions, when he received a final payment, he was required to execute a general release, and that on this occasion Crowley did not call his attention to the fact either that this was a final payment or that he was to be required to execute a general release. The release was on blue paper, and the fair inference is that the other papers were of a different color. Rokeby also testifies that the seal of the company was not attached to this release at the time he signed it, and that he did not authorize its attachment subsequently. According to the testimony of Crowley, he did not have a very clear recollection as to what occurred between him and Rokeby at the time of the execution of these papers; but his testimony is to the effect that it was his custom to call attention to final payments and to releases, and to take the acknowledgment of a person executing such releases, and to the best of his recollection he did so in this instance. With respect to the seal Crowley testified that for the convenience of the company it had left in the comptroller's office, for use when required, wafers with the impression of the genuine seal of the company thereon, and this evidence is undisputed. He had no positive recollecton as to who attached the seal, or whether it was attached at the time Rokeby executed the release, and admitted, in effect, that it might have been subsequently attached by him within a few minutes thereafter, when he had an opportunity of filling out this certificate of acknowledgment. He did testify, however, that the seals were delivered to him either by the president or another representative of the company, who on some occasions received the warrants, for use in the manner in which this seal was used, and to be attached by him to releases; and the last testimony he gave on the subject indicates that they were given to him for the purpose of having him affix them to releases. It is quite probable that this was the purpose of their delivery. If it had been intended that they should in each instance be affixed by the officer of the company, he might as well have carried them in his pocketbook. If the company did not fully authorize this irregular method of executing papers, it was called upon to explain the delivery of these seals to Crowley. It appears that both parties indulged in loose business methods; but it is to be borne in mind that Rokeby was the president of this company, and he was its authorized agent in transacting its business with the city. We are justified in indulging in the presumption on this evidence that the plaintiff duly authorized the impressions of its seal upon the wafers, and duly authorized their delivery at the comptroller's office with a view to their being used, when necessary, in the execution of papers concerning their contracts with the city. If the president of the company, therefore, knew in executing this release that the attachment of the seal was required, and, instead of attaching it

himself, he left it to Crowley to attach after admitting and acknowledging that it was attached by due authority of the company, the company should be held bound precisely the same as if Rokeby himself had affixed the seal. It is contended that Rokeby's testimony is positive that he neither affixed the seal nor authorized it to be affixed, and that he did not acknowledge the release, and that Crowley's testimony tending to support the due execution of the paper is weak. This is true, but it does not follow that the due execution of the release is impeached. The certificate of acknowledgment raises a presumption of due execution, which must be overthrown, and that presumption stands to be weighed against the opposing evidence. Albany County Savings Bank v. McCarty, 149 N. Y. 171, 43 N. E. 427.

The learned referee was justified in discrediting the testimony of Rokeby tending to impeach the certificate of acknowledgment. He would not admit the genuineness of the seal, saying that it might have been purchased for $2. His testimony was in other respects contradictory, unreliable, and improbable. Rokeby knew that there was a controversy between him and the city with reference to this contract, and particularly with respect to a deduction for liquidated damages. It is utterly improbable that in these circumstances he executed these various papers, as he testified, without noticing what they were. Moreover, with respect to an interview that subsequently took place between him and Crowley, he is directly contradicted by Crowley, whose testimony appears to be entirely fair and honest. We therefore agree with the learned referee that the presumption of the due execution of the release raised by the certificate of acknowledgment is not overcome.

It therefore follows that the judgment should be affirmed, with costs. All concur.