(120 App. Div. 291)

In re SEYBEL et al.

(Supreme Court, Appellate Division, First Department. June 21, 1907.)

ACCORD AND SATISFACTION—WHAT CONSTITUTES.

A demand was made on a city comptroller for an award of damages and interest for land taken by the city, and the comptroller made a counter demand for rents collected after the title vested in the city. About 4½ months later the amount due on the award at the time of the first demand

was paid and accepted, and a receipt "in full payment and satisfaction of said award and the interest thereon," granting and releasing to the city the land represented by the award and all interest thereon, was signed and acknowledged, and the comptroller, on behalf of the city, apparently waived its claim for rentals. About 19 months later the city was sued for the balance of the interest. *Held*, that there was an accord and satisfaction, since the claim of the comptroller for rentals seems to have been honestly made.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Accord and Satisfaction, §§ 60–62.]

Ingraham and McLaughlin, JJ., dissenting.

Appeal from Special Term.

Application by Daniel S. Seybel and others, executors, for a writ of mandamus against Herman A. Metz, comptroller. From an order of the Special Term directing judgment for certain interest on a damage award, Metz, comptroller, appeals. Reversed, and motion denied.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

John P. Dunn, for appellant.
Joseph A. Flannery, for respondents.

SCOTT, J. The city of New York appeals from an order requiring the comptroller of the city of New York to pay to Daniel E. Seybel and others, as executors of Isaac M. Dyckman, deceased, a sum of money representing the interest claimed to be due and unpaid to said executors upon an award made to them for the widening of West 230th street. There is no dispute as to the facts, which are as follows: Proceedings for the widening of the streets were initiated on March 5, 1896, and in due course commissioners of estimate and assessment were appointed. By resolution of the board of street opening and improvement, title to the land to be acquired for the widening vested in the city on October 20, 1897. The report of the commissioners was confirmed on October 21, 1903, and by it there was awarded to the above-named executors the sum of $83,343.82, with interest from the date that title to the property taken vested in the city. On February 15, 1904, one of the executors demanded payment, and the comptroller was on that day prepared and willing to pay them the sum of $114,-944.99, which is conceded to have been the amount then due for said award and interest. It appeared, however, that there was charged against said executors, on the books of the comptroller, a considerable sum on account of rents alleged to have been collected by said executors from the premises and property acquired by the city since the date of vesting of title, and the comptroller insisted that, before the full amount of the award and interest was paid to the executors, they should pay to the city the amount thus claimed to be due from them. The executors refused to accede to this demand, and the matter remained in abeyance until July 5, 1904, when the comptroller, on behalf of the city, apparently waived its claim to be paid the rentals collected by the executors, and paid to them, and they accepted, the aforesaid sum of $114,944.99, signing and acknowledging a receipt under seal, whereby they acknowledged that they had received said sum "in full payment and satisfaction of said awards and the interest thereon,"

and granted and released to the city of New York the lots and parcels of land represented by said awards, and all right, title, and interest therein of said executors, and of the estate of Isaac M. Dyckman, deceased. The amount thus paid and accepted represented the awards, with interest to February 15, 1904, the date on which demand had been made for their payment, and the counter demand had been made upon the executors for the rents collected by them. On January 31, 1906, nearly 19 months after the payment and acceptance, the executors began this proceeding for the interest on the awards from February 15, 1904, to July 5, 1904, the date of actual payment. We do not understand that the city disputes the contention, made on behalf of the petitioners, that in a case like the present interest on the award is given as part of the compensation allowed for the land, and that the property owner to whom such award is made is entitled to interest from the date that title vests in the city, down to the date of payment. Matter of Cromwell Ave., 96 App. Div. 424, 89 N. Y. Supp. 180, affirmed 181 N. Y. 594, 74 N. E. 1121. The petitioners were therefore entitled to insist upon payment of interest upon the awards down to the date of payment, if there was no legal offset or counterclaim to said awards.

The city contends, however, and as we think with reason, that the case presents all the elements of a complete accord and satisfaction, and that, under the circumstances, the amount paid to the executors must be deemed to have been received and accepted by them in satisfaction of a contest and dispute concerning the mutual claims between themselves and the city. "It is the settled law of this state that if a debt or claim be disputed or contended at the time of payment, the payment, when accepted, if a part of the whole debt, is a good satisfaction, and it matters not that there was no solid foundation for the dispute. The test in such cases is: Was the dispute honest or fraudulent? If honest, it affords the basis of an accord between the parties, which the law favors, and the execution of which is the satisfaction." Simons v. Am. Legion of Honor, 178 N. Y. 265, 70 N. E. 776.

A question very similar to the one now presented arose in Uvalde Paving Co. v. City of New York, 99 App. Div. 327, 91 N. Y. Supp. 131, wherein this court said:

"Moreover, the city has asserted the right to make the deduction from the final payment made. It had plausible grounds for such assertion, and, even though it conceded the right of the plaintiff to recover the amount it actually paid, still this would constitute an accord and satisfaction, regardless of the validity of the liquidated damage clause, until the validity of the release is impeached."

It certainly cannot be said that the claim for rentals collected by the executors, after title vested in the city, was dishonest, or even without a plausible foundation. The executors in their petition are careful not to deny that they did collect the rents for which a claim was made upon them. All that they say upon that subject is "that there was no legal claim or offset of the city of New York against said moneys due them," which they may have believed to be entirely true, and perhaps rightly, even if they had collected rents from the property after title

thereto had passed to the city; and yet it was not unreasonable for the comptroller to assert such claim. It was said by the Court of Appeals, respecting a somewhat similar state of affairs:

"It would require a very clear evidence of legislative intent to warrant such a construction of the statute as would give the owner both the use of his land and interest·upon the purchase money." Hamersley v. Mayo_, etc., 56 N. Y. 536.

And by section 151 of the Greater New York Charter, as amended by chapter 190 of the Laws of 1906, p. 404, it was made the duty of the bureau, in the comptroller's office, for the collection of the city revenue "to collect revenue for the temporary use and occupation of property acquired by the city for public purposes between the time of the acquisition thereof and the time when the same can be actually utilized for the purpose for which it was acquired." This statute was in force for a considerable time after the city had acquired title to the petitioners' property.

We do not decide, and are not called upon to decide, whether the city's claim against the executors was well founded. It is sufficient if honestly made. There is certainly nothing before us to cast any doubt upon the good faith with which it was made, and it is not surprising or unreasonable that the executors should have been willing to avoid the attempt to enforce the claim against them, by waiving interest upon the awards for a few months. There is no evidence that the executors accepted payment of ,the award under protest, or that they effectually reserved the right to insist upon any further payment. Certainly, their full and solemn receipt indicates nothing of the sort, and no evidence of any such protest or reservation is to be found among the records of the city. Their general statement that they accepted payment, "with the express reservation of any and all claims due upon said award of damages as aforesaid," is insufficient, as it does not show how or to whom such reservation was expressed, and may refer to a mere mental process known only to themselves. It may well be that, if the fact of such reservation had been communicated to the comptroller, he would have declined to abandon the city's claim against the executors. The length of time that the executors allowed to elapse after receiving payment and before the commencement of this proceeding, while not affecting their legal right, is some indication that they understood and intended at the time that they were completely acquitting the city of its debt to them.

The order should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs.

LAUGHLIN and CLARKE, JJ., concur.

INGRAHAM, J. I dissent. The city of New York, under the power given to it by the state, has taken these relators' property without their consent. They could only take that property by paying to the relators its value upon the day it was taken, and, as the city was authorized to take the property before the payment, they were required to pay interest on the amount that was ascertained as

the value of the property until it should be paid. Such a provision was necessary to make the provision allowing the city to take the property legal under the Constitution, and the city could not avoid this obligation by claiming some offset to the amount as a liability of the relators to it which it was entitled to deduct. What the relators were entitled to under the Constitution was the payment by the city of the actual value of the property and interest to the time of payment. The claim of the city that they were entitled to deduct some amount, which it is claimed the relators had collected for the property after the title had vested in the city, does not seem to have been justified. There is nothing to show that the city demanded possession of the property, and the relators would not have been liable to the city for use and occupation, unless some relation of landlord and tenant was established, of which there is no claim. Until the city demanded possession of the property, the former owners, who remained in possession, were not trespassers. This claim made by the comptroller was, so far as I can see, absolutely without justification, and his refusal to deliver the warrant to the relators, based upon such a claim, clearly imposed the obligation of paying interest until he actually delivered the warrant. When the warrant was actually delivered, some months afterwards, the city actually owed the relators the interest to the date of payment. It is well settled that the delivery of a lesser amount than is actually due does not discharge the whole indebtedness. The execution of this receipt, there not being any provision for a general release, does not estop the relators from afterwards proving that their claim was not entirely satisfied. The fact that a seal was attached gave it no greater effect. It was still a receipt, and a receipt only, and was open to explanation. There is nothing to justify the court in finding that there was an accord and satisfaction or any settlement of conflicting claims. All that the city did was to deliver a check that it conceded was due. The relators conceded nothing and received no advantage, except payment of an amount that was concededly due. I certainly think that this claim to deduct some assumed rentals that the former owner of the property had received, after the title vested in the city, was not based upon "plausible grounds"; that it was absolutely unjustified by anything that appears upon this record; but whatever may be the ground for a refusal to pay, the city has never released the relators from any claim that it may have for such rents. There was no settlement of any dispute. The city released nothing. The city paid nothing except what it conceded to be due, and the payment of what was conceded to be due, but which was considerably less than what was actually due, where the city gave up no claim that it had against the person to whom it paid the money, cannot, upon any principle that I am aware of, be tortured into an accord and satisfaction.

I think the judgment should be affirmed.

McLAUGHLIN. J., concurs.