THE HETTRICK MANUFACTURING COMPANY, Respondent, *v.* MEYER BARISH, Doing Business as MEYER BARISH MANUFACTURING COMPANY, Appellant.

Supreme Court, Appellate Term, First Department, October, 1922, Term — Filed May, 1923.

**Accord and satisfaction — sales — effect of cashing check sent in full payment after deducting alleged setoff, is to satisfy debt.**

Where a vendor cashes a check sent to him by a purchaser in declared full payment of an initially agreed price for goods after deduction of an amount to cover an alleged counterclaim or setoff for breach of warranty, an accord and satisfaction of the vendor's entire claim is effected.

In an action to recover the balance of the original purchase price of merchandise sold and delivered, the defendant, claiming that the goods had been sold with a warranty that they would originate at certain mills whereas they had been manufactured elsewhere, claimed to be entitled under a contract of resale to an offset for profits lost by reason of this disparity. A correspondence between the parties in which the above stated facts appear, concluded with a letter from defendant inclosing a check " covering your invoice less deductions mentioned above which settles our account in full to date." *Held*, that the act of plaintiff in cashing the check effected an accord and satisfaction of its entire claim.

Upon the trial before the court without a jury the sole dispute was as to the right of the defendant to a claim for loss of profits, and the court, upon holding that the sending of the check in full payment for less than the amount admittedly due to the plaintiff could not preclude it from recovering that amount, rendered judgment in favor of plaintiff for the deductions made by defendant from plaintiff's total bill. Upon appeal from the judgment no doubt was suggested concerning defendant's good faith in preferring his counterclaim for loss of profits nor was there any claim that both parties did not have full knowledge of all the circumstances up to and including the cashing of the check. *Held*, that the transaction effected an accord and satisfaction of plaintiff's entire claim, and the judgment appealed from will be reversed, with costs, and judgment directed in favor of defendant, with costs, with leave to plaintiff to appeal to the Appellate Division.

GUY, J., concurring; MULLAN, J., dissenting.

APPEAL by defendant from a judgment of the Municipal Court of the city of New York, borough of Manhattan, third district, in favor of plaintiff, after a trial by a judge without a jury.

*Horace London*, for appellant.

*Young & Hughes (James A. Hughes*, of counsel), for respondent.

BIJUR, J. This appeal raises solely the question of law whether a valid accord and satisfaction has been established by the defendant under the following circumstances:

43

Plaintiff sued to recover $380.59, balance of the original purchase price of merchandise sold and delivered to defendant. Defendant, claiming that the goods had been sold with a warranty that they would originate at mills in a certain section whereas they had been manufactured elsewhere, claimed to be entitled, under a contract of resale, to an offset for profits lost by reason of this disparity. These facts appear in a correspondence between the parties which concludes with a letter from defendant inclosing a check " covering your invoice less deductions mentioned above which settles our account in full to date." Plaintiff cashed the check. Defendant's contention is that this act effected an accord and satisfaction of plaintiff's entire claim. Plaintiff, however, has recovered for the deductions made by defendant from the total bill. The learned judge below wrote: " There never was any dispute between the parties as to the amount due. The sole dispute was as to the right of the defendant to a claim for loss of profits. Under such circumstances I do not think that the defendant by sending a check in full payment for less than the amount admittedly due to the plaintiff can preclude the plaintiff from recovering that amount."

No doubt is suggested concerning defendant's good faith in preferring his counterclaim for loss of profits, nor is it claimed that both parties did not have full knowledge of all the circumstances of the transaction up to and including the cashing of defendant's check sent in full payment.

The question is thus clearly presented whether a vendor effects an accord and satisfaction by banking a check sent to him by the purchaser in declared full payment of an initially agreed price for goods, after deduction by the purchaser of an amount to cover an alleged counterclaim or setoff for breach of warranty. This question arises so frequently in our commercial community that the correct answer thereto is of immediate and pressing importance, and warrants a thorough examination of the history of the principles which control it.

The futility of the attempted satisfaction of an admitted debt by the bare payment of a sum less than the full amount thereof was settled by the famous resolutions in *Pinnel's Case,* 5 Co. Rep. 117a (1602):

" And it was resolved by the whole Court, that payment of a lesser sum on the day in satisfaction of a greater, cannot be any satisfaction for the whole, because it appears to the Judges that by no possibility, a lesser sum can be a satisfaction to the plaintiff for a greater sum: but the gift of a horse, hawk or robe, etc. in satisfaction is good."

Lord Coke in his Commentary on Littleton, p. 212b, repeats this reason: " Because it is apparent that a lesser sum of money cannot be a satisfaction of a greater."

Dean Ames, in an article on " Two Theories of Consideration," 12 Harvard Law Review, 515, 552, *et seq.*, says: " The rule [in *Pinnel's* case] is older than the doctrine of consideration and is simply the survival of a bit of formal logic of the medieval lawyers." He demonstrates that it was not intended thereby to hold more than that the payment of a lesser sum could not be a technical *satisfaction* of a larger debt; that indeed Lord Coke himself in *Bagge* v. *Slade*, 3 Bulst. 162 (1614), wrote: " If a man be bound to another by a bill in 1,000*l.* and he pays into him 500*l.* in discharge of this bill the which he accepts of accordingly, and doth upon this assume and promise to deliver up unto him his said bill of 1,000*l.*, this 500*l.* is no *satisfaction* of the 1,000*l.*, *but yet this is good* and sufficient to make a good promise *and upon a good consideration,* because he has paid money, five hundred pound, and he hath no remedy for this again."

Other cases are cited indicating that Lord Coke's contemporaries also were of opinion that actual payment of part of an admitted debt *was* sufficient *consideration* to support a promise of the creditor either to surrender the evidence of the debt or not to prosecute for the balance. Some 200 years later, however, Lord Ellenborough, in *Fitch* v. *Sutton*, 5 East, 230 (1804), gave as a reason for the rule that " There must be some consideration for the relinquishment of the residue, something collateral; to shew a possibility of benefit to the party relinquishing his further claim, otherwise the agreement is *nudum pactum.*" Upon this Dean Ames' comment is: " This statement by Lord Ellenborough, false gloss though it be, has been generally followed by the courts, and is responsible for the greater part of the objectionable applications of the doctrine of consideration, whereby the reasonable expectations of business men have been disappointed. But notwithstanding its general acceptance, this doctrine of Lord Ellenborough has met with almost unparalleled animadversion at the hands of the judges who have applied it."

A number of cases in England and this country are cited, including *Kellogg* v. *Richards*, 14 Wend. 116, 119; *Jaffray* v. *Davis*, 124 N. Y. 164, 167. In the last named case Potter, J., writing for the court said: " The courts, while so ruling, have rarely failed upon any recurrence of the question, to criticise and condemn its reasonableness, justice, fairness or honesty." See, also, 1 C. J. 541, n. 79, and 543, n. 1, 2, and Prof. Williston's " Accord and Satisfaction," 17 Harvard L. Rev. 458, 468, and the same author's work on

Contracts, § 1451. The development of the rule in *Pinnel's* case as extended by Lord Ellenborough furnishes a striking example of one of the peculiar influences in the moulding of our system of jurisprudence alluded to by Judge Holmes in his " Common Law " (at p. 5): " A very common phenomenon, and one very familiar to the student of history, is this. The customs, beliefs, or needs of a primitive time establish a rule or a formula. In the course of centuries the custom, belief, or necessity disappears, but the rule remains. The reason which gave rise to the rule has been forgotten, and ingenious minds set themselves to inquire how it is to be accounted for. Some ground of policy is thought of, which seems to explain it and to reconcile it with the present state of things: and then the rule adapts itself to the new reasons which have been found for it, and enters on a new career. The old form receives a new content, and in time even the form modifies itself to fit the meaning which it has received."

Although the rule in *Pinnel's* case and the notion that it is based on the principle of consideration (*Fuller* v. *Kemp*, 138 N. Y. 231, 237) has become so firmly established as to have required legislation for its abolition in practically all those jurisdictions which desired the change (1 C. J. 542), a knowledge of its origin and development helps to explain the very general condemnation meted out to it as opposed to the common practice and understanding of the business community. Its permanent adoption into our jurisprudence has resulted, however, in inculcating into the mind of every lawyer the conviction that the actual payment of part of a debt, even by an embarrassed debtor, is neither a detriment to him nor such advantage to the creditor as to warrant its being regarded as consideration for some corresponding covenant on the creditor's part; whereas in daily life the opinion and experience of every business man are to the contrary. The result of this recognized conflict between theory and fact has been to lead the courts to limit the application of the rule strictly to those cases which fall precisely within its confines. Thus in *Kellogg* v. *Richards*, *supra*, Nelson, J., writes: " The rule * * * is technical and not very well supported by reason. Courts, therefore, have departed from it upon slight distinctions." In *Smith* v. *Ballou*, 1 R. I. 496, the court said: " The rule is evidently distasteful to the courts and they have always been anxious to escape it by nice distinctions."

Chief Justice Fuller in *Chicago, Milwaukee, etc., Ry. Co.* v. *Clark*, 178 U. S. 353, 365, says of it: " While the general rule must be regarded as well settled, it is considered so far with disfavor as to be confined strictly to cases within it."

With this background we may proceed to a discussion of the rationale of the rule as now interpreted and of its application to concrete cases in this state.

The rule, of course, has no bearing upon the method or possibility of satisfying an unliquidated claim, it being universally conceded that such an obligation may be satisfied by the transfer or surrender of anything with which the creditor may be content. *Fuller* v. *Kemp, supra;* Williston Cont. § 128. It is important, therefore, to understand the significance of the phrase " liquidated " as applied to a debt in cases of this kind. Probably the most useful definition is to be found in *Chicago, Milwaukee, etc., Ry. Co.* v. *Clark, supra,* 372: " The word ' liquidated ' is used in different senses, and as applicable here means made certain as to what and how much is due; *made certain by agreement of parties or by operation of law.*"

It has always been held that a liquidated debt can be satisfied by the transfer to the creditor of something of unfixed value. As far back as 1495, Brian, C. J., said (Y. B. 10 Hen. VII, f. 4, pl. 4): " The action is brought for 20 pounds and the concord is that he shall pay only 10 pounds which appears to be no satisfaction for 20 pounds. For payment of 10 pounds cannot be payment of 20 pounds. But if it were a horse, which horse is paid according to the concord, that is good satisfaction; *for it does not appear whether the horse is worth more or less than the sum in demand.* And notwithstanding the horse may be worth only a penny, that is not material, *for it is not apparent.*" If then the " gift of a horse, hawk or robe " (as said in *Pinnel's* case) may be satisfaction of a liquidated debt, it surely follows that the payment in cash of part of the sum due *plus* such unvalued " gift " must at least have the same effect. *Neal* v. *Handley,* 116 Ill. 418, 423.

Nor does it require argument to prove that the thing given need not be a physical object, but that the transfer or relinquishment by the debtor to the creditor of a *chose in action* is equally effective. While it is apparent that a *chose in action* against a third person would satisfy the requirement of consideration under the rule, there is no reason to doubt that a claim against the creditor himself must be similarly regarded. Indeed, from one aspect it might be treated as more effective since the creditor is manifestly in better position to judge of its validity and of the responsibility of the person against whom it exists. Furthermore, although the respective amounts involved do not affect the principle, it may, nevertheless, satisfy a business instinct to appreciate that the debtor's counterclaim might well be a justifiable one for consequential damages much larger in amount than the original debt.

See, for example, *Acme Glass Co.* v. *Woods-Lloyd & Co.*, 182 App. Div. 538.

Finally it is to be noted in respect of the counterclaim, and I think that this is a determinative consideration, that it is a well-established principle that "the settlement of a doubtful claim will uphold a promise to pay a stipulated sum or do any other lawful act." *White* v. *Hoyt*, 73 N. Y. 505, 515. "Compromises of disputed claims fairly entered into are final, and will be sustained by the courts without regard to the validity of the claim." *Sears* v. *Grand Lodge*, 163 N. Y. 374, 379. See, also, *Simons* v. *American Legion of Honor*, 178 N. Y. 263; *Post* v. *Thomas*, 212 id. 264; *Andrews* v. *Brewster*, 124 id. 433, 439, and numerous cases both in this country and England, cited in 13 C. J. 324, n. 22.

Strange to say this familiar principle has received little special mention in the pertinent decisions although it is decisive of the fact that consideration (by way of surrender of the counterclaim) has passed to the creditor in cases of claimed accord and satisfaction like the one at bar. If the counterclaim be liquidated by previous agreement it is consideration to the creditor to the extent of the amount agreed upon. If it is still unliquidated it becomes consideration to the extent of the amount agreed upon in the course of the accord. See *infra, Fuller* v. *Kemp* and *Nassoiy* v. *Tomlinson*.

It seems to me to follow from the foregoing analysis that the payment by a debtor in cash of part of a liquidated liability, coupled with the transfer or surrender by him to the creditor of a *bona fide* unliquidated counterclaim against the creditor is sufficient consideration for a valid discharge of the whole debt if stipulated to be "in full." Williston Cont. § 129.

This precise question, arising in the instant case, was considered and the accord held to have been established in *Taylor* v. *Nussbaum*, 2 Duer, 302, 309 (1853); *Hills* v. *Sommer*, 53 Hun, 392 (1889); *Jackson* v. *Volkening*, 81 App. Div. 36 (1903); affd., 178 N. Y. 562 (1904); *Uvalde Paving Co.* v. *City of New York*, 99 App. Div. 327, 329; *Brewster* v. *Silberstein*, 78 Misc. Rep. 123; *Galvanotype E. Co.* v. *Internat. Assn.*, 98 id. 295.

In *Hills* v. *Sommer, supra*, Cullen, J., writing for the General Term of this department, said: "On the arrival of the goods in St. Joseph the defendants notified the plaintiffs that a part of the lemons were defective in quality and condition, *and that they would not receive the goods unless a rebate in price* was made as to such part. This rebate the plaintiffs refused to allow. * * * The draft enclosed was for the amount at which the defendants expressed their willingness to receive the goods. The plaintiffs

received and collected the draft and then brought this action to recover the balance  *  *  *

" Upon the facts stated we think the verdict for defendants was properly directed.  It is unnecessary to determine whether the defendants could accept part of the shipment and reject the remainder, or whether there was a warranty that would survive such acceptance.  Whether right or wrong in their view of the law, the defendants disputed their liability for the amount claimed. There was no request to submit to the jury the question of the *bona fides* of this dispute.  That fact was assumed, and a claim may be honestly disputed upon a matter of law as well as a matter of fact.  (*Woodruff* v. *Woodruff*, 52 N. Y. 53.)  Therefore, payment of a less amount than that claimed would constitute a valid accord and satisfaction."

In *Jackson* v. *Volkening, supra,* Laughlin, J., for the Appellate Division of this department, wrote (at p. 44):  " In the case at bar it is unnecessary to determine whether the defendant's claim for a rebate was valid and enforcible.  The court will not inquire into the merits; it is sufficient if there was any plausible ground for a *bona fide* claim, and it was made in good faith, and it is immaterial whether the dispute arose over a question of fact or law." And further (at p. 46):  " The case is this:  The plaintiff has a claim against the defendant for a balance of account.  The defendant, in good faith, asserted something more than a colorable claim *as an offset thereto.  Thus the defendant's liability became unliquidated* and he tendered the plaintiff a check in full settlement and imposed as a condition that its acceptance and use should constitute full satisfaction of the plaintiff's demand against him. This, I think, constitutes an accord and satisfaction within all the authorities."  As hereinbefore noted this case was affirmed in the Court of Appeals, in 178 New York, 562.

The conclusion arrived at in these cases coincides with that reached in other states.  *Ostrander* v. *Scott*, 161 Ill. 339, 345 (1896): " It is claimed that the account of the plaintiff was liquidated because its items were not disputed.  But if there was a controversy over a set-off, and the balance due the plaintiff was fairly in dispute, the claim could not be treated as liquidated."  *Bingham* v. *Browning*, 197 Ill. 122, 135, 136 (1902); *Tanner* v. *Merrill*, 108 Mich. 58, 61 (1895), citing with approval *Hills* v. *Sommer, supra; Missouri & Ill. Coal Co.* v. *Consol. Coal Co.*, 127 Mo. App. 320 (1907); *Pollman Coal Co.* v. *St. Louis*, 145 Mo. 651, 657 (1898):  " The assumption of plaintiff that there was not and could not be a disputed claim because the amount of plaintiff's claim was fixed by contract is not tenable  *  *  *.  Its claim cannot be held as

liquidated when the balance due it was fairly in dispute as to the amount of set-off the city claimed." *Conn. River Lumber Co.* v. *Brown,* 68 Vt. 239 (1895); *Hull* v. *Johnson & Co.,* 22 R. I. 66 (1900); *Stanley-Thompson Co.* v. *Southern Co.,* 65 Colo. 587, 590 (1919): " That a set-off or counterclaim which is uncertain in amount renders the debt unliquidated, though plaintiff's claim is not in dispute, is settled in this state by the decision of this court in *New York Life Ins. Co.* v. *MacDonald,* 62 Colorado, 57. Moreover, the opinion in that case is in accord with the weight of authority in the United States    *    *    *.    The check in question, in the instant case, was only for the amount conceded by the defendant to be due, but this fact does not preclude an accord and satisfaction." See, also, *Chicago, Milwaukee, etc., Ry. Co.* v. *Clark,* 178 U. S. 353.

The only case to the contrary outside of this state which I have been able to find is *Demeules* v. *Jewel Tea Co.,* 103 Minn. 150 (1908).

Most of the cases above cited proceed on the theory that an initially " liquidated " claim or debt becomes unliquidated when by reason of a counterclaim or offset the actual amount due on balance has been put in doubt between the parties. The identical conclusion is reached, however, if we regard the debtor's obligation as remaining continuously liquidated, noting, however, that his counterclaim is unliquidated. The legal effect of the transaction appears more clearly if we imagine the interchange to take place separately, namely, that the debtor pays the full amount of his debt to the creditor and the creditor settles the debtor's unliquidated counterclaim for the amount proposed by the latter. Surely in in such a case there could scarcely be any doubt of the validity of the discharge of both obligations. There seems to be no reason why a different result should be attributed to a single transaction which contains all the elements of the two separate ones, the actual cash exchanged representing the balance of the respective payments. In ordinary practice the debtor, in answer to the creditor's demand for a fixed sum, claims a rebate or offset and in substance says to his creditor, " if you will liquidate my counterclaim at a fixed amount I will pay you the balance of your claim in cash and assign or relinquish to you my counterclaim which *your acceptance hereof will liquidate at the sum which I propose.*" Thus the creditor is practically paid and the counterclaim of the debtor is settled. Strictly speaking, of course, the creditor is not " paid," for payment assumes satisfaction in the " coin of the realm." Consequently, although the effect is the same as if the creditor's claim had been paid and the debtor's counterclaim " accorded and satisfied," the

result technically is an accord and satisfaction of the creditor's initial demand. A good illustration of the correctness of this analysis of the transaction as substantially a payment of the original debt is afforded by the case of *Howard* v. *Norton,* 65 Barb. 161, 169, where the payment of part of a liquidated debt in cash and the surrender of a certain number of sheep in addition was held not to effect an accord and satisfaction because the sheep were *taken at an agreed valuation,* and the aggregate of that valuation plus the cash sum paid *failed to equal the face amount of the debt.* Had the sheep been accepted by the creditor without any valuation it would have been a case of true accord and satisfaction. Had they been accepted at a valuation, agreed upon between the parties, sufficient with the cash payment to equal the face of the debt it would have been a case in substance of payment which, of course, would discharge the debt as effectually as a mere accord and satisfaction. The transaction usually assumes the form of a statement from the debtor acknowledging the face of the debt, crediting himself with the amount at which he values his counterclaim and inclosing a check for the balance " in full " of the account. The assent of the creditor, evidenced by acceptance of the check tendered conditionally, is conclusively presumed as matter of law. In *Fuller* v. *Kemp,* 138 N. Y. 231, 238, the court quotes with approval the language of Judge Pierpont in *Preston* v. *Grant,* 34 Vt. 201: " When a tender or offer is thus [conditionally] made, the party to whom it is made has no alternative but to refuse it, or accept it upon such condition." In *Nassoiy* v. *Tomlinson,* 148 N. Y. 326, 331, Judge Vann writes: " The plaintiff cannot be permitted to assert that he did not understand that a sum of money, offered ' in full ' was not, when accepted, a payment in full. As was said in *Hills* v. *Sommer* (53 Hun, 392, 394), he was bound either to reject ' the check ' or by accepting it to accede to the defendant's terms. The money tendered belonged to them (defendants) and they had the right to say on what condition it should be received. ' Always the manner of the tender or payment, shall be directed by him who made the tender or payment, and not by him who accepts it (*Pinnel's Case,* 5 Co. Rep. 117a).' "

We come then to three comparatively recent decisions in this state: *Windmuller* v. *Goodyear Tire & Rubber Co.,* 123 App. Div. 424 (1908); *Kleinfelter* v. *Granger,* 136 N. Y. Supp. 485 (1911) and *Frank* v. *Vogt,* 178 App. Div. 833 (1917). The *Windmuller* case is cited in the *Kleinfelter* case at page 488 as " decisive of the question now under discussion," and both the *Windmuller* and *Kleinfelter* cases are cited as precedents in the *Frank* case, at page 834. As I read them they mark a cleancut departure from

682    HETTRICK MANUFACTURING CO. *v.* BARISH.

。 Appellate Term, First Department, May, 1923.    [Vol. 120

the rule previously adopted, and this estimate of their significance is confirmed in 1 Corpus Juris, 557, where under note 50 it is said of the *Kleinfelter* case: " This decision, it may be noted, is squarely in conflict with *Jackson* v. *Volkening.*   *   *   *   And see *Windmuller* v. *Goodyear T. & R. Co.*   *   *   *   (where the same conclusion as that in *Kleinfelter* v. *Granger, supra,* seems to have been reached)."

We are thus confronted with conflicting decisions in the same court, the leading one of the earlier cases having been affirmed in the Court of Appeals and being supported by the plain weight of authority in other states, whereas the later cases do not expressly either overrule or undertake to distinguish the earlier.

In the *Windmuller* case a check was sent, as usual, by the buyer for the face amount of an initially liquidated debt after deduction of the amount of defendant's counterclaim for breach of warranty. The check was accepted and cashed with full knowledge of its purpose. The opinion reads, in part, at page 426: " In the present case the only controversy was as to the alleged warranty, and the only question between the parties was as to whether there had been such a warranty or not. *No check was ever sent, in settlement of that controversy* and as to it there was, therefore, no accord and satisfaction. The sum of $62.25 for which a check was sent was not in settlement of any controversy, *for the defendant admittedly owed that amount in any event,* and as to it there was no controversy whatsoever," etc.

In the *Kleinfelter* case no opinion was written in the Appellate Division, but in the court below the learned judge said: " Turning now to the claim of the defendants for damages for delay in shipment and delivery, this is an unliquidated demand. Assuming that the plaintiff had, by writing, promised to pay this demand, a promise so made would be void and of no effect, unless supported by a valid and sufficient consideration, and notwithstanding such promise having been given, the plaintiff still might contest and litigate the validity of the claim upon the merits."

In *Frank* v. *Vogt* it is said: " That defendant, when he sent the check, wrote that he was sending it as full payment does not affect the question. *He could not by paying an amount admittedly due in any event* foreclose the plaintiffs from claiming that more was due, nor yet subject them to the risk of postponing the payment of the whole claim, *until defendant's relatively small counterclaim could be judicially liquidated.* To hold otherwise would result, in many cases, in permitting a debtor to coerce his creditor into making an unjustified deduction from his bill."

It will be observed that the general line of reasoning which underlies these three cases is (1) that the debtor is " paying only

an amount admittedly due in any event," and that consequently no accord and satisfaction is effected; (2) that the creditor's initial claim being admitted, the only controversy is about the defendant's counterclaim which is not settled by the transaction; (3) that any promise made by the creditor for the surrender of the defendant's unliquidated demand or counterclaim is not supported by a valid or sufficient consideration; and finally (4) a suggestion that the debtor is in some way taking advantage of the creditor by compelling him to settle or liquidate the debtor's claim with the alternative of being remitted to his legal remedies to recover the whole amount of the original debt.

As to the first proposition, the phrase that the debtor is paying only an amount admittedly due in any event, is not a statement of the rule in *Pinnel's* case, which is that the mere payment of *part* of an amount admittedly due will not effect an accord. If the fact that the debtor admitted that the amount of cash which he was paying was due rendered an accord and satisfaction impossible, there could never be an accord and satisfaction in cases where the accord comprises a partial payment in cash, for by the very act of payment the debtor admits that what he pays is due. A bare payment imports that it is in satisfaction of a debt. *Leask* v. *Hoagland,* 205 N. Y. 171; *Nay* v. *Curley,* 113 id. 575, 577. Moreover, in the case supposed the payment is not based on the debtor's admission that so much is due *in any event,* but is expressly conditioned upon the creditor's acceptance of the debtor's estimate of the value of his counterclaim. Finally, and this I think the most important factor, the statement disregards the vital and determinative fact that in addition to the cash payment, the debtor is assigning or relinquishing to the creditor his *bona fide* unliquidated counterclaim. The question being not what the debtor admits or denies but whether the creditor is receiving valid and legal consideration for a remission of part of the debt, the principal role in the transaction is manifestly ṛlayed by the counterclaim which the phrase under discussion wholly omits from consideration. Its determinative significance will be appreciated if we pause to ask what has become of the counterclaim. The debtor has undoubtedly offered to relinquish his counterclaim and pay a certain amount in cash provided his offer be accepted as satisfaction in full. The creditor's cashing of the check imports as matter of law his acceptance of the offer. If the transaction be spoken of as merely a payment of an amount admittedly due, I am at a loss to understand what disposition it may be thought has been made of the counterclaim. It certainly no longer belongs to the debtor; and if the creditor has acquired it, that feature fur-

nishes ample consideration for his reciprocal relinquishment of part of the debt.

The phrase " payment of an amount admittedly due " was, I think, borrowed from an altogether different situation and inadvertently applied to the class of cases now under discussion. Its significant legal connotation is illustrated in *Mance* v. *Hossington*, 205 N. Y. 33, 35, 36: "The payment of an admitted liability is not a payment of or consideration for an alleged accord and satisfaction *of another and independent* alleged liability." That is to say, the payment of the amount of one item or claim " admittedly due " *by the debtor to the creditor* cannot accomplish an accord of *another* and independent alleged liability due *from the same debtor to the same creditor.* This principle enjoys universal recognition. See *Seattle, Renton, etc., R. Co.* v. *Seattle-Tac. P. Co.*, 63 Wash. 636; *Walston* v. *Calkins Co.*, 119 Iowa, 150; *Carlton* v. *Western & Atlantic R. Co.*, 81 Ga. 531; *Armour & Co.* v. *Ross & Barfield*, 110 id. 403. It plainly has no application to the class of cases we are considering.

The second proposition is that the claim being liquidated, the only controversy is about defendant's counterclaim and that is not settled by the transaction. This I think is answered by the preceding argument. Furthermore, while it is apparently physically true, as said in the *Windmuller Case, supra,* that " No check was ever sent in settlement of that controversy (namely, the counterclaim)," the check that was sent did, as I understand it, settle that controversy because it represented the deduction of the amount counterclaimed by the defendant, and the creditor's acceptance of that check liquidated and settled the debtor's counterclaim by agreement of the creditor to the amount of the deduction.

The third proposition (expressed only in the *Kleinfelter* opinion, below) is that any promise made by the creditor in exchange for the surrender of defendant's unliquidated demand or counterclaim is not supported by sufficient consideration. This is practically a contradiction in terms of the rule laid down in *White* v. *Hoyt, supra,* and the many cases hereinabove cited which have followed it in this and other jurisdictions. As I have said before, *White* v. *Hoyt* appears to settle the decisive point in this entire discussion. I am not unmindful of the distinction between an executory and an executed accord; but that difference need not be considered in this connection because both the instant case and all the other cases herein discussed disclose a state of facts where the entire transaction has been completed, and consequently involve exclusively " executed " accords.

Finally, we come to the suggestion in *Frank* v. *Vogt, supra,* that to

hold the kind of transaction under discussion effective as an accord and satisfaction subjects the creditor to " the risk of postponing the payment of the whole claim, until defendant's relatively small counterclaim could be judicially liquidated." This very phrase, however, suggests, if it does not indeed recognize, that what is taking place is a liquidation of defendant's counterclaim, by assent of the parties instead of by judicial process. In the next place, it presupposes that defendant's counterclaim is relatively small, but as I have pointed out, it may very well be much larger than the original debt, in which event the very converse of the thought expressed would be true. It seems to me, however, that the notion of some commercial hardship involved in the transaction is unjustified. The debtor is seeking an accord and satisfaction necessarily involving the settlement by agreement of some controversy between his creditor and himself. To say that this imposes a hardship upon the creditor, because, if he refuses to accept the proposition, he is remitted to the ordinary processes of a court, is tantamount to rejecting the possibility of an accord and satisfaction.

I feel that this discussion would be incomplete without a reference to the ambiguous signification of the terms " liquidated " and " unliquidated " in cases of accord and satisfaction. What was really decided by *Pinnel's* case, even as we now interpret it, was concretely this: that a debtor cannot, *while admitting* a liability in a definite sum, claim to have " satisfied " it by the mere payment of a less sum. The word " liquidated " has a useful connotation in certain fields of the law; as for example, in the determination of the date from which interest may be computed, the form of judicial remedy applicable to the enforcement of a right, the fixation of damages, etc. In that relation a claim is generally called unliquidated if the amount thereof cannot be ascertained *at the time of the trial* by mere computation based either on the terms of the obligation or some other accepted standard, and this regardless of whether the debtor disputes his liability in any or every respect. On the other hand, in connection with the law of accord and satisfaction a debt is unliquidated if *at the time of the attempted accord*, either the creditor himself concedes that the amount has not been fixed or the debtor in good faith disputes his liability as to the amount or as to any other element of the obligation, and regardless of whether the amount would otherwise be ascertainable by a fixed standard or not. It seems to me. therefore, that if we understand " liquidated " and " unliquidated " to mean respectively " admitted " and " unadmitted " (or as it is often called " disputed ") at the time of the accord, we will be free

from the confusion resulting from the fact that the terms have, as intimated by Chief Justice Fuller, *supra,* an altogether different significance in other fields of the law. In the foregoing opinion I have adopted the usually accepted phraseology and so long as the real meaning is borne in mind the mere terms employed are comparatively unimportant; but it may not be without value to remember that neither in *Pinnel's* case, nor in the earlier cases which followed it, was the debt sought to be discharged spoken of either as liquidated or unliquidated, and that in following the rule in that case within the narrow scope to which modern decisions hold it confined, we should continuously recognize its precise limitations.

I have felt that an extended consideration was appropriate in the instant case because the subject is one of daily and pressing importance frequently presented for decision in this court and because it is essential to the business community that the apparent conflict between the earlier and later cases which has led to much confusion should be definitely resolved. The final and authoritative disposition of the question rests, of course, with the higher appellate courts, but if the foregoing analysis affords any aid toward that result it will have accomplished a useful purpose. Meanwhile I think it is the appropriate course to follow what I regard as the controlling decision in the Court of Appeals and reverse the judgment below, with leave, however, to appeal to the Appellate Division.

I feel the more impelled to advise this procedure because in the recent decision of *Milford Spinning Corp.* v. *Manowitz,* 203 App. Div. 415 (1922), the Appellate Division of this department, by Dowling, J., has, as I read the opinion, held that an accord and satisfaction would be established if as a result of an honest dispute concerning his counterclaim defendant deducted an allowance therefor and sent a check in full payment for the difference between the amount of plaintiff's claim and the amount of the deduction and such check was cashed by plaintiff. Moreover, in the same case the court cites with approval a decision of the Appellate Division in the fourth department (1902), Mr. Justice Hiscock writing, *i. e., Whitaker* v. *Eilenberg,* 70 App. Div. 489, in which there was a holding to the same effect, and in which the counterclaim arose out of the same transaction as the one which was the basis of plaintiff's cause of action.

Judgment reversed, with thirty dollars costs, and judgment directed in favor of the defendant, with costs, with leave, however, to respondent to appeal to the Appellate Division.

GUY, J., concurs.

MULLAN, J. (dissenting).   I dissent, not because of any inclination to disagree with the views expressed by my learned brother Bijur in the splendid contribution he has made to the law affecting one of the most important subjects in the whole domain of human relations, but because I do not feel that the members of this court are free either to apply or express any views that they may themselves hold upon the question now before us.   This case is on all fours with *Frank* v. *Vogt*, 178 App. Div. 833.   Mr. Justice Bijur himself admits that no distinction can possibly be drawn between that case and this.   If the decision there was right, as we of this court must assume it to be, it follows that the judgment below should be affirmed.   If it were possible to suppose that the learned Appellate Division had not been referred to some controlling authority supporting a conclusion contrary to that reached by that court, it would be open to us, I think, with perfect propriety to assume that a different conclusion might have been reached. It does not seem to me, however, in view of the history of the legal controversy concerning the point in question, that such an assumption can be indulged in here.   See the opinions in the *Frank* case and in *Windmuller* v. *Goodyear Tire & Rubber Co.*, 123 App. Div. 424.   I think, therefore, that unless or until the Appellate Division in this department shall adopt a view contrary to that expressed in the *Frank* case, the rule there laid down must be deemed binding upon us.   It may be difficult to reconcile the holding in the *Frank* case with the very recent decision in the *Milford Spinning & Weaving Co.* case, but as the opinion in the latter case contains no mention of *Frank* v. *Vogt*, a case that has become a leading and much used authority in this department, I am not prepared to regard the *Milford Spinning & Weaving Co.* decision as an intentional repudiation of the *Frank* v. *Vogt* holding.   Accordingly, I vote to affirm.

Judgment reversed.